**REED SMITH LLP**
Diane A. Bettino, Esq.
Natsayi Mawere, Esq.
Victoria R. Serigano, Esq.
506 Carnegie Center, Suite 300
Princeton, New Jersey 08540
Tel. (609) 514-5962
Fax (609) 951-0824
*Attorneys for Plaintiff-Petitioner JPMorgan Chase Bank, N.A.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A.,<br><br>Plaintiff-Petitioner,<br><br>v.<br><br>MARTIN PIOTR NOWAK and<br>CONTINENTALIS DIVITIAE EXPRESS<br>TRUST,<br><br>Defendants-Respondents. | Civil Action No.:<br>__23__-cv-__6834__<br><br>**COMPLAINT/PETITION** |

Plaintiff-Petitioner JPMorgan Chase Bank, N.A. ("Chase" or "Plaintiff"), by and through its undersigned counsel, hereby makes this Complaint/Petition for a declaratory judgment against defendants-respondents Martin Piotr Nowak ("Nowak" or "Defendant") and Continentalis Divitiae Express Trust ("CDET" or "Trust Defendant") (together, "Defendants"). Specifically, Chase seeks entry of a judgment declaring that the purported award of $3,490,687,291.34 against Chase in favor of Defendants (the "Fraudulent Award") is null and void, and that Defendants have no entitlement to such a recovery. In addition, Chase seeks an order vacating the Fraudulent Award, granting Chase injunctive relief, and a judgment based on Defendants' violations of the Racketeer Influenced and Corrupt Organization Act.

**PRELIMINARY STATEMENT**

1. This Court should recognize the Fraudulent Award for what it is: the latest iteration in a long line of attempts by Nowak to subvert court precedent and lodge bogus claims against Chase. The circumstances that led to this lawsuit do not arise from a naïve residential borrower who did not know better. Rather, they are the culmination of Nowak's affirmative choices rife with blatant misrepresentations and outright fraud. Having ignored a handful of court orders and decisions finding that Nowak cannot articulate a single cognizable claim against Chase, Nowak cannot escape the simple fact that his unlawful conduct has finally caught up with him.

2. Nowak is a "sovereign citizen"—which the Federal Bureau of Investigation ("FBI") has identified as a domestic terrorist group—who preaches that the U.S. state and federal governments lack constitutional legitimacy and therefore have no authority to regulate his behavior. According to the FBI and United States Department of Justice, sovereign citizens (like Nowak) are notorious for attempting to criminally defraud others (*e.g.*, the government, financial lenders, the financially illiterate, etc.) by misusing or fraudulently creating documents that appear legitimate but typically consist of nonsensical, rambling rhetoric to confuse and defraud recipients.

3. Here, Defendants have conspired to commit mail fraud by sending fraudulent correspondence to Chase and claiming that Nowak has a near-$4 billion award against Chase arising out of alleged violations of international commercial law, the Uniform Commercial Code, admiralty law, maritime law, the Treaty of Marrakesh, the Treaty of Tripoli, and other inapplicable law. Defendants' misconduct falls squarely within the type of activities violative of the Racketeer Influenced and Corrupt Organization ("RICO") statute. As a result of defendants' RICO violations, Chase has been harmed in its business, and is therefore entitled to recover from Defendants, jointly and severally, treble damages, punitive damages, and attorneys' fees.

4. Further, to-date Nowak has not served Chase with an arbitration award or a notice to participate in *any* arbitration commenced by Nowak, only with a notice of intention for a claim.

5. Chase therefore brings this action for a judicial declaration that the near-$4 billion Fraudulent Award is null and void and that Defendants have no right to such recovery. In addition, Chase seeks vacatur of the Fraudulent Award, injunctive relief, and a judgment based on Defendants' RICO violations.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the RICO counts pursuant to 18 U.S.C. § 1964, and subject matter jurisdiction over the state-law counts pursuant to the supplemental jurisdiction furnished by 28 U.S.C. § 1367(a).

7. Independent of its RICO jurisdiction, this Court has subject matter jurisdiction of this action pursuant to the diversity statute, 28 U.S.C. § 1332(a)(2), in that the action is between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. Venue is proper in the Southern District of New York pursuant to 18 U.SC. § 1965 and 28 U.S.C. § 1391 because, upon information and belief, all of the defendants are subject to personal jurisdiction in this judicial district and reside in this district. In addition, all or a substantial portion of the occurrences complained of herein occurred in this district.

## THE PARTIES

9. Chase is a national bank organized and existing under the laws of the State of Delaware with a place of business located at 270 Park Avenue, New York, New York 10017.

10. Nowak is an adult citizen of the State of New York who currently resides at 113 New York Ave, Long Beach, New York 11561.

11. Upon information and belief, the Trust Defendant is a foreign entity organized and existing under the laws of Malaysia with a place of business located at Equatorial Plaza, Jalan Sultan Ismail, Kuala Lumpur 50250.

## FACTUAL BACKGROUND

12. On March 17, 2006, Nowak executed a Home Equity Line of Credit Note ("HELOC Note") in favor of Chase in the principal amount of $150,000.00. As security for the HELOC Note, Nowak executed, acknowledged, and delivered a mortgage ("HELOC Mortgage") to Chase, its successors and assigns, and granted Chase an interest in the premises more particularly described as 113 New York Ave, Long Beach, New York 11561 (the "Mortgaged Premises"). The HELOC Mortgage was recorded in the Nassau County Clerk's Office on April 11, 2006.

13. A little more than five years later, on December 30, 2011, Nowak executed a Consolidated Note ("Note") with Chase in the total amount of $340,900.00. As security for the Note, Nowak executed, acknowledged, and delivered a Consolidation, Extension, and Modification Agreement ("CEMA") to Chase, its successors and assigns, and granted an interest in the Mortgaged Premises. The CEMA was recorded in the Nassau County Clerk's Office on March 20, 2012.

14. Significantly, there are no arbitration clauses in the loan documents executed between Chase and Nowak.

15. Nowak has defaulted on both loans with Chase. To date, there have been four (4) lawsuits based on the same underlying allegations, transactions, and facts.

### The Eastern District of New York Lawsuit

16. After defaulting on both loans, Nowak commenced an action *pro se* on August 31, 2018 in the Eastern District of New York, seeking to modify or discharge his debt with Chase. *See*

*Martin-Piotr Nowak v. JPMorgan Chase & Co. and JP Morgan Chase Bank, N.A.*, Eastern District of New York, Case No. 18-CV-04972 (the "EDNY Lawsuit").

17. On November 21, 2018, Chase moved to dismiss the Complaint in the EDNY Lawsuit based on Nowak's failure to state a claim. In opposition, Nowak asserted nonsensical and irrelevant arguments based on, but not limited to, admiralty law, maritime law, the United States postal manual, the Geneva Conventional Treaty, and the Uniform Commercial Code (the "UCC"). By order dated March 31, 2019, the Eastern District held that there was no ascertainable claim for relief, dismissed the Complaint, but allowed Nowak to amend.

18. Nowak attempted to cure the defects of his original Complaint in his Amended Complaint dated April 19, 2019, and asserted claims for breach of contract, fraud in the factum, lack of jurisdiction, financial discrimination, and for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"). Nowak also sought to discharge his debt and demanded $5,200,000.00 in damages.

19. On June 18, 2019, Chase moved for dismissal of the Amended Complaint and in opposition, Nowak regurgitated his earlier nonsensical arguments. By decision dated August 14, 2019, the Eastern District found that the Amended Complaint was "barely more comprehensible" than the original Complaint, and dismissed the Amended Complaint in its entirety without granting Nowak leave to amend.

## The Second Circuit Appeal

20. Once the EDNY Lawsuit was dismissed, Nowak appealed the dismissal order *pro se* in the Second Circuit of the United States Court of Appeals. *See Martin-Piotr Nowak v. JPMorgan Chase & Co. and JP Morgan Chase Bank, N.A.*, Second Circuit, Case No. 19-2981-CV (the "Second Circuit Appeal").

21.     On April 1, 2021, the Second Circuit held that Nowak failed to state a claim and affirmed the dismissal of the EDNY Lawsuit.

### The CEMA Foreclosure Lawsuit

22.     On February 20, 2019, Chase commenced a foreclosure action against Nowak by Summons and Complaint based on his default on the CEMA Note. *See JPMorgan Chase Bank, National Association v. Martin P. Nowak, JPMorgan Chase Bank, N.A., Barbara Nowak, Citi Bank NA.*, the Supreme Court of New York, Nassau County, Index No. 602421/2019 (the "CEMA Foreclosure Lawsuit").

23.     Nowak asserted an Answer *pro se* on March 25, 2019 with seventeen (17) affirmative defenses and a "counter-offer" to Chase's Complaint.

24.     On February 22, 2022, Chase moved for summary judgment against Nowak. In opposing the summary judgment motion, Nowak asserted other baseless arguments—such as how his opposition "undeniably shows beyond doubt that there is a criminal conspiracy orchestrated by [Chase] and [Chase's] firm/attorneys, Nassau County Clerk's [O]ffice, the court and potentially other unknown actors"—which the Court categorically rejected in its April 4, 2022 decision granting summary judgment to Chase.

25.     The CEMA Foreclosure Lawsuit remains pending.

### The HELOC Foreclosure Lawsuit

26.     On March 22, 2023, Chase commenced a foreclosure action against Nowak by Summons with Notice and Complaint based on his default on the HELOC Note. *See JPMorgan Chase Bank, N.A. v. Martin P. Nowak, Citibank, N.A., et al.*, the Supreme Court of New York, Nassau County, Index No. 604804/2023 (the "HELOC Foreclosure Lawsuit"). Upon information and belief, Nowak has not yet filed an Answer in the HELOC Foreclosure Lawsuit.

27. The HELOC Foreclosure Lawsuit remains pending.

**Defendants' Fraudulent Correspondence**

28. Since 2017, Defendants have sent no fewer than thirty-four (34) fraudulent letters to Chase,[1] purporting to assert claims against Chase arising out of international commercial law, the UCC, admiralty law, maritime law, the Treaty of Marrakesh, the Treaty of Tripoli, the Articles of Confederation, the Law of Nature, the Treaty of Peace and Friendship, and the Holy Scriptures, to name a few.

29. Notably, this correspondence includes IRS Form 56, IRS Form W-8BEN, UCC Financing Statements, Private Registered Setoff Bonds, Affidavits of Truth, Hold Harmless Agreements, Legal Notices and Demands, Notice of Fault, Power of Attorney, and Notices of Dishonor and Opportunity to Cure—all types of documents that the United States Department of Justice and FBI have identified as documents commonly utilized by sovereign citizens (like Nowak) to further their fraudulent schemes.

---

[1] This correspondence included, but was not limited to: undated Bond Order of $100,000,000.00; purported bank certificate dated October 26, 2017; negotiable security instrument dated November 3, 2017; purported lien discharge dated May 25, 2018; UCC Financing Statement dated May 30, 2018; purported settlement check dated June 7, 2018; UCC Financing Statement dated August 28, 2018; Common Law Copyright Notice dated October 15, 2018; IRS Form 56 and IRS Form W-8BEN dated October 15, 2018; Legal Notice and Demand dated October 15, 2018; Hold Harmless and Indemnity Agreement dated October 15, 2018; Security Agreement dated October 15, 2018; UCC Financing Statement dated December 25, 2018; UCC Financing Statement dated April 9, 2019; Affidavit of Fact and Truth dated March 2, 2020; Notice of International Commercial Claim dated March 2, 2020; Affidavit of Notice of Liability Regarding Trespass dated March 7, 2021; Claimant notification of reservation of rights dated October 20, 2021; Notices of Absolute Forgiveness dated January 5, 2022; Claim notice dated June 13, 2022; Claim notice dated August 18, 2022; True Bill (Invoice) dated August 18, 2022; Fault by Dishonor Notice dated August 18, 2022; Default by Dishonor Notice dated September 6, 2022; Certificate of Non-Response dated September 6, 2022; True Bill (Invoice) dated October 31, 2022; Fault by Dishonor Notice dated October 31, 2022; Certificate of Non-Response dated November 14, 2022; Default by Dishonor Notice dated November 14, 2022; True Bill (Invoice) dated January 30, 2023; Notice to Agent dated April 15, 2023; Special Notice to Agent dated April 15, 2023; True Bill (Invoice) dated April 18, 2023; and True Bill (Invoice) dated April 30, 2023.

30.     Notwithstanding Defendants' plethora of correspondence sent to Chase, to-date Defendants have not served Chase with a notice to participate in *any* arbitration. As described in more detail below, Defendants have only served Chase with a notice of intention for a claim, and not any actual arbitration claim or notice to arbitrate. What's more, Defendants have not served Chase with any arbitration award. But in an abundance of caution, Chase is seeking to vacate the Fraudulent Award to eliminate any misimpression Defendants may have about the legitimacy of their bogus correspondence.

31.     Although hard to glean from Defendants' rambling rhetoric in their fraudulent correspondence to Chase, the Fraudulent Award appears to be based on several categories of documents, including notices of claim, fault notices, special notices of interest, and bills arising from those notices.

i. *Notices of Claim*

32.     After defaulting on his loans, Nowak proceeded to inundate Chase with purported notices of claim, including a Common Law Copyright Notice dated October 15, 2018, Legal Notice and Demand dated October 15, 2018, Notice of International Commercial Claim dated March 2, 2020, Notice of Liability Regarding Trespass dated March 7, 2021, Claim notice dated June 13, 2022, and Claim notice dated August 18, 2022.

33.     These claim notices include fee schedules for the costs associated with Nowak's alleged pain and suffering (e.g., "[f]or each court special appearance/general appearance … $150,000,000.00 (One Hundred Fifty Million)"; "[f]or each and any lawful/legal counter claim … $5,000,000 (Five Million) … per violation"), demands for documents, and demands for admissions.

### ii. *Fault/Default Notices*

34.     When Chase refused to respond to such nonsensical notices of claim, Nowak escalated his fraudulent scheme by sending to Chase a series of purported fault or default notices, including a Fault by Dishonor Notice dated August 18, 2022, Default by Dishonor Notice dated September 6, 2022, Certificate of Non-Response dated September 6, 2022, Fault by Dishonor Notice dated October 31, 2022, Certificate of Non-Response dated November 14, 2022, and Default by Dishonor Notice dated November 14, 2022.

35.     Through these notices, Nowak attempted to interpret Chase's silence to his fraudulent correspondence as acquiescence to Nowak unilaterally granting himself powers of attorney, confessions of judgment, discharge of liens, attachments, and bonds from Chase.

### iii. *Special Notices*

36.     Beginning in 2023, the Trust Defendant also sent notices to Chase, including several Special Notices of Interest dated April 15, 2023. These special notices were sent by the Trust Defendant, through Nowak as its "authorized representative," which purported to be an entity with rights to the Mortgaged Premises and interests in all prior notices, and fee demands, sent by Nowak to Chase.

### iv. *"True" Bills/Invoices*

37.     Defendants also sent no fewer than five (5) purported bills and invoices, purporting to charge Chase *billions of dollars* in outstanding fees associated with Nowak's notices. These bills and invoices include the True Bill (Invoice) dated August 18, 2022, True Bill (Invoice) dated October 31, 2022, True Bill (Invoice) dated January 30, 2023, True Bill (Invoice) dated April 18, 2023, and True Bill (Invoice) dated April 30, 2023.

38. Specifically, the True Bill (Invoice) dated April 18, 2023 claims that Chase owes an award of $3,490,687,291.34 to Defendants while the True Bill (Invoice) dated April 30, 2023 claims that Chase owes an additional $326,491,501.77 towards that Fraudulent Award.

39. This lawsuit follows.

### COUNT I:  DECLARATORY JUDGMENT

40. Plaintiff repeats and realleges all prior paragraphs.

41. Defendants claim to be entitled to the Fraudulent Award of $3,490,687,291.34.

42. It is Plaintiff's position that the Fraudulent Award is unenforceable and that Defendants have no entitlement to such a recovery.

43. There is therefore a live and ripe controversy between Plaintiff and Defendants regarding whether the Fraudulent Award is enforceable.

44. Plaintiff has no adequate remedy at law regarding this matter.

45. Plaintiff is therefore entitled to a judgment judicially declaring that the Fraudulent Award is null and void and that Defendants have no entitlement to such a recovery.

### COUNT II: VACATUR OF THE FRAUDULENT AWARD PURSUANT TO CPLR 7511

46. Plaintiff repeats and realleges all prior paragraphs.

47. If the Court determines that the Fraudulent Award is enforceable, Plaintiff is still entitled to vacatur of the Fraudulent Award under CPLR 7511.

48. Plaintiff is a party that neither participated in the arbitration nor was served with a notice of intention to arbitrate as set forth in CPLR 7511(b)(2).

49. Plaintiff is a party whose rights were prejudiced by the Fraudulent Award because a valid agreement to arbitrate was not made between the parties as set forth in CPLR 7511(b)(2)(ii).

50. Alternatively, Plaintiff is a party whose rights were prejudiced by the Fraudulent Award, which was procured by corruption, fraud, or undue means as set forth in CPLR 7511(b)(2)(i).

51. As a result of the Fraudulent Award, Plaintiff has suffered damages.

52. Plaintiff is therefore entitled to a judgment vacating the Fraudulent Award under CPLR 7511(b)(2) and/or 7511(b)(2)(ii).

### COUNT III: ALTERNATIVELY, VACATUR OF THE FRAUDULENT AWARD PURSUANT TO 9 U.S.C.S. § 10

53. Plaintiff repeats and realleges all prior paragraphs.

54. If the Court determines that the Fraudulent Award is enforceable, Plaintiff is still entitled to vacatur of the Fraudulent Award under 9 U.S.C.S. § 10.

55. This is an atypical case.

56. Although Plaintiff was served with notice of intention for a claim by Nowak, Plaintiff never received an actual arbitration award nor a notice to participate in any arbitration commenced by Nowak.

57. Plaintiff is a party whose rights were prejudiced by the Fraudulent Award being procured by corruption, fraud, or undue means.

58. As a result of the Fraudulent Award, Plaintiff has suffered damages.

59. Plaintiff is well within the 3-month statute of limitations to vacate the Fraudulent Award.

60. Plaintiff is therefore entitled to a judgment vacating the Fraudulent Award under 9 U.S.C.S. § 10.

### COUNT IV: Preliminary and Permanent Injunction

61. Plaintiff repeats and realleges all prior paragraphs.

62. Defendants have been engaged in an ongoing pattern of fraudulent, criminal conduct to Plaintiff's detriment.

63. Defendants' conduct has caused irreparable injury to Plaintiff and, absent an injunction, will continue to cause irreparable injury to Plaintiff.

64. Therefore, Defendants should be preliminarily and permanently enjoined from engaging in fraudulent conduct against Plaintiff.

### COUNT V: RICO Violations Under 18 U.S.C. § 1962(c)

65. Plaintiff repeats and realleges all prior paragraphs.

66. Upon information and belief, Trust Defendant is an enterprise engaged in and whose activities affect interstate commerce.

67. Upon information and belief, Nowak is employed by or associated with the enterprise.

68. Defendants agreed to and did conduct and participate in the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

69. Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of mail fraud proscribed by 18 U.S.C. § 1341. In particular, Defendants devised and intended to devise a scheme or artifice to defraud, and to obtain money by means of false and fraudulent pretenses and representations, and for the purpose of executing such scheme or artifice or attempting so to do, placed in and received from the United States Postal Service and private interstate couriers documents in connection with such schemes and fraud, in violation of 18 U.S.C. § 1341.

70. Defendants' misconduct constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

71. Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

72. As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has suffered harm.

73. Plaintiff is thus entitled to damages, including treble damages, punitive damages, and attorneys' fees.

## COUNT VI: RICO Violations Under 18 U.S.C. § 1962(d)

74. Plaintiff repeats and realleges all prior paragraphs.

75. Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).

76. Such conspiracy included the manufacture of fraudulent invoices, notices of claim, fault notices, special notices of interest, and bills arising from those notices.

77. Defendants have intentionally conspired and agreed to directly and indirectly conduct and participate in the enterprise's affairs through a pattern of racketeering activity. Defendants knew that their predicate acts were part of a pattern of racketeering activity, and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

78. As a direct and proximate result of the defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has suffered harm.

79. Plaintiff is thus entitled to damages, including treble damages, punitive damages, and attorneys' fees.

**WHEREFORE**, based upon the foregoing, Plaintiff respectfully requests that the Court enter a judgment:

A. On the First Count for Declaratory Judgment, a Judgment declaring that the Fraudulent Award is null and void and that Defendants have no entitlement to such a recovery.

B. On the Second Count for Vacatur under CPLR 7511(b)(2) and/or 7511(b)(2)(ii), a Judgment vacating the Fraudulent Award.

C. Alternatively, on the Third Count for Vacatur under 9 U.S.C.S. § 10, a Judgment vacating the Fraudulent Award.

D. On the Fourth Count for a preliminary and permanent injunction, an order enjoining Defendants from engaging in fraudulent conduct against Plaintiff.

E. On the Fifth Count for RICO Violations under 18 U.S.C. § 1962(c), a Judgment for damages, including treble damages, punitive damages, and attorneys' fees.

F. On the Sixth Count for RICO Violations under 18 U.S.C. § 1962(d), a Judgment for damages, including treble damages, punitive damages, and attorneys' fees.

G. Granting to Plaintiff such other and further relief against each of the Defendants as may to the Court appear just, proper, and equitable, including the costs and disbursements of this action.

Dated: August 3, 2023
    New York, New York

- 15 -

/s/ *Natsayi Maware*
Diane A. Bettino, Esq.
Natsayi Mawere, Esq.
Victoria R. Serigano, Esq.
REED SMITH LLP
506 Carnegie Center, Suite 300
Princeton, New Jersey 08540
Tel. (609) 514-5962
Fax (609) 951-0824
*Counsel for Plaintiff-Petitioner*
*JPMorgan Chase Bank, N.A.*