UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JPMORGAN CHASE BANK, N.A.,
                Plaintiff,

-v-

MARTIN PIOTR NOWAK, *et al.*,
                Defendants.

23-CV-6834 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    Plaintiff JPMorgan Chase Bank, N.A. ("Chase") brings this action against Defendants Martin Piotr Nowak and Continentalis Divitiae Express Trust ("Trust Defendant") alleging that Defendants sent letters to Chase seeking to enforce a fraudulent billion-dollar legal judgment against Chase. Chase alleges that Defendants' actions qualify as mail fraud in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), (d), and seeks a declaratory judgment that the award is unenforceable, a permanent injunction against future attempts to enforce the award, and attorney's fees and costs.

    The Court previously granted a preliminary injunction against Defendants to prevent further fraudulent mailings, and deemed the Trust Defendant in default as it was not represented by counsel and could not proceed *pro se*.

    Before the Court now is Chase's motion for summary judgment and Nowak's motion to amend his counterclaims. For the reasons that follow, Chase's motion is granted and Nowak's motion is denied.

## I. Background

### A. Factual Background

The following facts are taken from Chase's statement pursuant to Local Civil Rule 56.1 (ECF No. 71 ("Chase SOF")), relevant exhibits, and Nowak's memorandum at Docket Number 81, which combines his motion to amend the answer and his opposition to Chase's motion for summary judgment (ECF No. 81 ("Nowak Mem.")). These facts are undisputed unless otherwise noted,[1] and they are construed in the light most favorable to Nowak as the non-moving party for summary judgment. *See Friend v. Gasparino*, 61 F.4th 77, 84 (2d Cir. 2023) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

#### 1. Previous Foreclosure Litigation

Nowak's relationship with Chase began on March 17, 2006, when "Nowak executed a $150,000 Home Equity Line of Credit Note ('HELOC Note')" with Chase. (Chase SOF ¶¶ 1-2.) The associated mortgage was recorded in Nassau County on April 11, 2006. (*Id.* ¶ 2.) Years later, on December 30, 2011, Nowak executed a "Consolidation, Extension, and Modification Agreement" ("CEMA") and note ("CEMA Note") with Chase for $340,900, burdening the same property as the HELOC Note and mortgage. (*Id.* ¶¶ 3-4.) The CEMA was recorded in Nassau County on March 20, 2012. (*Id.* ¶ 4.)

---

[1] Despite Chase's giving proper notice to Nowak of his responsibility to respond to its Rule 56.1 statement (*see* ECF No. 72), Nowak did not file such a statement, nor did he address most of Chase's allegations in his opposition filing. "Accordingly, the Court may conclude that the facts in Plaintiff's 56.1 Statement are uncontested and admissible." *Freedom Mortg. Corp. v. Heirs*, No. 19-CV-1273, 2020 WL 3639989, at *1 n.1 (S.D.N.Y. July 6, 2020). Given the special solicitude afforded to *pro se* litigants, however, the Court reads any relevant facts asserted in Nowak's memorandum in opposition to Chase's motion for summary judgment as responsive to those asserted in Chase's 56.1 statement.

Nowak eventually defaulted on both loans, and Chase brought two foreclosure actions against Nowak in state court. (*Id.* ¶¶ 6, 11.) The Nassau County Supreme Court granted Chase's motion for judgment of foreclosure and sale of Nowak's property on the terms of the CEMA Note in May 2024, and the litigation on the HELOC Note is still pending before that court. (*Id.* ¶¶ 10-11.)

Separate from the state court litigation, Nowak commenced his own suit against Chase in the United States District Court for the Eastern District of New York in 2018, "seeking to modify or discharge his debt with Chase," as well as asserting claims for breach of contract, fraud, financial discrimination, and RICO violations. (*Id.* ¶¶ 12-18); *Nowak v. JP Morgan Chase Bank, N.A.*, No. 18-CV-4972, 2019 WL 3817395, at *1 (E.D.N.Y. Aug. 14, 2019). The district court dismissed Nowak's action for failure to state a claim, and the Second Circuit affirmed that dismissal in 2021. *See Nowak v. JPMorgan Chase & Co.*, 847 F. App'x 31 (2d Cir. 2021) (summary order).

### 2. Defendants' Letters

Relevant to the present case, Chase alleges that Nowak and the Trust Defendant "have sent no fewer than thirty-four (34) fraudulent letters to Chase" since 2017. (Chase SOF ¶ 19; ECF Nos. 65-3 to 65-9.) These letters "assert claims against Chase arising out of international commercial law, the UCC, admiralty law, maritime law, the Treaty of Marrakesh, the Treaty of Tripoli, the Articles of Confederation, the Law of Nature, the Treaty of Peace and Friendship, and the Holy Scriptures." (Chase SOF ¶ 19.) The mailings have also included documents purporting to be IRS forms, UCC statements, and other allegedly legal documents. (*Id.* ¶¶ 20-21.)

Chase did not respond to any of Defendants' letters. (*Id.* ¶ 23.) Defendants then mailed Chase five different bills and invoices totaling billions of dollars. (*Id.* ¶¶ 23, 26; ECF No. 65-13

("Bills").) One bill, dated August 18, 2022, states that Chase owes Nowak $304,013,427. (Bills at 3.) Another bill, dated April 18, 2023, states that Chase, in total, owes the Trust Defendant—whose "authorized representative" is Nowak— $3,490,687,291.34 ("the Award").[2] (*Id.* at 10 (capitalization altered).)

Nowak attempted to enforce the purported Award in this District, but his case was transferred to the Eastern District of New York and then dismissed for lack of subject matter jurisdiction. *See Martin Piotr Nowak® v. JPMorgan Chase Bank, N.A.*, No. 23-CV-5783, 2023 WL 5952055, at *1, *3-4 (E.D.N.Y. Aug. 9, 2023).

In his brief in opposition to Chase's motion for summary judgment in the present case, Nowak has now clarified: "There was never an award, but a claim, which has been already abandoned and the pursuit to collect on it was ceased with the commencement of this instant action. Further, Martin states that it was a mistake." (Nowak Mem. ¶ 31.)

### 3.     Present Litigation

The Court assumes familiarity with the procedural posture of this case, as described in its opinion denying Nowak's motion to dismiss. *See JPMorgan Chase Bank, N.A. v. Nowak*, No. 23-CV-6834, 2024 WL 1329410, at *1 (S.D.N.Y. Mar. 28, 2024) ("*Nowak I*"). Chase commenced this case on August 3, 2023. (ECF No. 1 ("Compl.").) Previously in this litigation, the Court granted a temporary restraining order (ECF No. 12) and a preliminary injunction (ECF No. 31) against Defendants, and denied Nowak's motion to dismiss, *Nowak I*, at *8.

Nowak filed his answer, including counterclaims, on April 18, 2024. (ECF No. 48 ("Answer").) Chase moved for summary judgment on June 24, 2024. (ECF No. 68.) Nowak

---

[2] Chase focuses its claims on only the $3,490,687,291.34 award, which appears to be a culmination of the previous bills sent to Chase. Thus, when the Court refers to "the Award," it encompasses the five invoices sent to Chase and attached to Docket Number 65. (*See* Bills.)

opposed the motion and cross-moved to amend his answer and counterclaims on August 13, 2024. (Nowak Mem.) Chase opposed that cross-motion and replied in further support of its motion for summary judgment on August 27, 2024. (ECF No. 83.)

After its motion for summary judgment was fully briefed, Chase notified the Court that Nowak had filed a Chapter 13 bankruptcy action in the United States Bankruptcy Court for the Eastern District of New York and moved to stay the case (ECF No. 87), which the Court granted on September 17, 2024 (ECF No. 88). In April 2025, Chase updated the Court on the dismissal of Nowak's bankruptcy case the previous month (ECF Nos. 91; 91-1), and, following an in-person conference at which Nowak did not appear,[3] the Court lifted the stay on May 21, 2025. (ECF No. 93.)

On June 11, 2025, the Court received a mailing from Nowak stating that he had filed another bankruptcy action in the United States Bankruptcy Court for the Eastern District of New York on June 4, 2025. (ECF No. 94 at 1-2.) After the Court ordered Chase to show cause as to why the present litigation should not again be stayed pending a determination on Nowak's second bankruptcy (ECF No. 95), Chase filed a declaration asking the Court not to stay the case, or, alternatively, to limit the stay to thirty days (ECF No. 96 at 3). Pursuant to 11 U.S.C. § 362(c)(3)(A) of the United States Bankruptcy Code, the automatic stay imposed on pending civil actions against a debtor once a bankruptcy action has been filed is limited to thirty days "if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed." Such is the case here. (*See* ECF No. 91-1 (Order dismissing Nowak's first

---

[3] Nowak claims he never received notification about the conference. (ECF No. 94.) However, the Court mailed a copy of the scheduling order to Nowak at the address he provided to the Court (*see* ECF No. 92), and it is Nowak's responsibility to maintain an up-to-date mailing address with the Court throughout litigation.

bankruptcy action on March 10, 2025).) The Court has thus delayed acting on any matters in this case until after July 4, 2025, thirty days after Nowak filed his second bankruptcy action. (*See* ECF No. 94 at 1-2.)

## II.     Legal Standard

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is only appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, a court must "resolve all ambiguities and draw all permissible inferences in favor of the party against whom summary judgment is sought." *Friend*, 61 F.4th at 84 (quotation marks omitted).

Nowak is litigating his case *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Because of this special solicitude, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted). That said, such liberal construction "does not relieve [Nowak] of his duty to meet the requirements necessary to defeat a motion for summary judgment." *See Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003).

### III. Discussion

Chase alleges that Nowak has violated the civil RICO statute and seeks as remedies a permanent injunction against Nowak from attempting to collect on the Award, an anti-filing injunction to prevent Nowak from trying to enforce the Award in court, and attorney's fees and costs.[4]

#### A.     Civil RICO

Civil RICO makes it unlawful for an individual "associated with any enterprise engaged in . . . interstate of foreign commerce . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity," 18 U.S.C. § 1962(c), or "to conspire" to do so, *id.* § 1962(d). "To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quotation marks omitted).

##### 1.     Section 1962(c)

"To establish a violation of § 1962(c) . . . a plaintiff must show that a person engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (quotation marks omitted). The first question is whether Nowak and the Trust Defendant were involved in an enterprise when they created and sent the mailings to Chase. While the United States Supreme Court has clarified that an individual person on his own is not an "enterprise" for the purposes of RICO, it also held that an individual working in conjunction with a legal entity that

---

[4] Chase appears to have abandoned its claims for vacatur of the arbitral award, as the claims were not briefed in its motion for summary judgment. *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016). Regardless, because Nowak admitted that he had made a "mistake" in calling his mailings an "award" (*see* Nowak Mem. ¶¶ 31, 33), it appears undisputed that there was no valid arbitral award to begin with.

solely consists of that individual—for example, a corporation where the sole shareholder is the other individual in the enterprise—does qualify as a RICO-eligible enterprise. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-63 (2001). And even if the Trust Defendant was never a valid legal entity,[5] the Supreme Court has also clarified that the definition of "enterprise" in Section 1961(4) "include[s] both legitimate and illegitimate enterprises within its scope." *See United States v. Turkette*, 452 U.S. 576, 580 (1981). Ultimately, Nowak has failed to allege facts that would in any way rebut Chase's showing that he and the Trust Defendant have been engaged together in a fraudulent enterprise.[6]

Nor is there any genuine dispute of material fact as to whether Defendants engaged in a pattern of racketeering activity. Chase alleges that the predicate act underlying Defendants' RICO violations is mail fraud due to the series of fabricated letters and bills Defendants mailed to Chase. (Compl. ¶ 3); *see United States v. Zemlyansky*, 908 F.3d 1, 10-11 (2d Cir. 2018) (discussing mail fraud as a predicate act for a RICO conspiracy claim); *see also* 18 U.S.C. § 1341 (defining mail fraud as "devis[ing] any scheme or artifice to defraud, or for obtaining

---

[5] Neither side has presented evidence at the summary judgment stage to indicate the legitimacy of the Trust Defendant or whether there are members beyond Nowak. Nowak has stated that the Trust Defendant "is an irrevocable express trust organization, expressed under declaration on October 22, 2020 and filed and recorded in the Organic public record of Dutchess County, with the county clerk [an immigrational officer of a naturalization court 8 U.S.C. 1101(7)], as such, the trust was established according to the year 1776 Equity Law from the unincorporated The united States of America, under judicial power and inherited civilian due process protection without the roman/civil jurisdiction." (ECF No. 26 ¶ 4 (no alterations made).) While Nowak's pseudo-legal jargon borders on nonsensical, Chase does not dispute the existence or the validity of the Trust Defendant.

[6] Nowak states in his opposition to Chase's motion for summary judgment that the Trust Defendant was created in 2020 and so the mailings that were sent before that time could not qualify as RICO activity (presumably because there was no enterprise if Nowak was the only actor). (*See* Nowak Mem. ¶ 31.) However, the mailings Chase has submitted include an alias of the trust ("Martin Piotr Nowak Trust") dating back to at least 2018. (*See* ECF No. 8-3 at 6-17.)

money or property by means of false or fraudulent pretenses [or] representations," and, "for the purpose of executing such scheme or artifice[,]" knowingly mailing the fraudulent document).

After examining the hundreds of pages of letters and bills Nowak sent over the course of several years, both in his individual capacity and as the alleged "representative" for the Trust Defendant, no rational juror could find that they are authentic or valid. (*See* ECF Nos. 8-3 to 8-13; 65-3 to 65-15.)[7] The letters, while mostly unintelligible and fanciful, range from a purported "Default by Dishonor Notice" stating that "Chase chose dishonor and failed to honor Claimants' demand for requested documents and answer to questions" and therefore Chase had "default[ed]" in some unidentified action (*see* ECF No. 8-7 at 4-5 (capitalization altered)), to a "claim notice" stating that Chase owes Nowak damages due to the "emotional, physical and mental injuries" caused by Chase "intimidating" Nowak "with threats of foreclosure/legal action" (ECF No. 8-8 at 6 (capitalization altered)). The bills that Defendants sent Chase are just as outlandish. Each—marked unconvincingly as "TRUE BILL—(Invoice)"— list numerous, nonsensical violations of various federal and state law and enumerate billions of dollars in damages and late fees that Chase allegedly owes Defendants. (*See* Bills at 2-12.) Thus, a rational juror would undoubtedly find that Defendants committed a pattern of mail fraud through these voluminous mailings.

2.  **Section 1962(d)**

Section 1962(d) prohibits a person from conspiring to violate Section 1962(c). To establish a RICO conspiracy pursuant to Section 1962(d), a plaintiff must prove "that the defendant 'knew about and agreed to facilitate the scheme.'" *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) (quoting *Salinas v. United States*, 522 U.S. 52, 66 (1997)). "To satisfy this

---

[7] The letters that Chase has attached at Docket Number 65 are blurry and difficult to read. Because the same letters appear under seal at Docket Number 8 and are legible, the Court relies upon those exhibits.

standard for each co-conspirator, a plaintiff must establish (1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; (3) that the co-conspirator knowingly participated in the same." *Black v. Ganieva*, No. 21-CV-8824, 2022 WL 2354916, at *21 (S.D.N.Y. June 30, 2022) (quotation marks omitted).

Here, there is no question that Nowak knew about, participated in, and acted in furtherance of the mail fraud scheme. In fact, the exhibits presented by Chase suggest that Nowak was the one devising and conducting the entire thing. Nowak's name is on all of the letters sent to Chase, and he often signed his own signature on documents purportedly sent by the Trust Defendant, which stated that Nowak is the "authorized representative" of the trust for these (fraudulent) matters. (*See generally* ECF Nos. 8-3 to 8-15 (capitalization altered).) Though Chase has not pin-pointed an explicit agreement between Nowak and the Trust Defendant, "a defendant's agreement to join a conspiracy can be inferred from circumstantial evidence of the defendant's status in the enterprise or knowledge of wrongdoing." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 154 (S.D.N.Y. 2014) (quotation marks omitted). Nowak's repeated signature on documents with the Trust Defendant's name, and his title as its "authorized representative," permits the inference of an agreement between the two parties. Ultimately, with the evidence Chase has put forward, and the complete lack of evidence Nowak has identified to rebut these claims, no rational juror could find for Nowak on the RICO conspiracy claim.

### 3. Nowak's Defenses

In his latest filing, Nowak argues that because the Award "was a mistake" he cannot be held liable under RICO. (Nowak Mem. ¶ 33.) But his assertion begs credulity. Nowak and the Trust Defendant mailed Chase hundreds of pages of fraudulent documents in the form of dozens of letters and bills, repeating the same "mistake" time after time, year after year. (*See* ECF Nos 8-3 to 8-13.) Indeed, even well into the present litigation, Nowak was still maintaining the

legality of the Award (though he rebranded it as nothing more than a "Claim"), stating that the Trust Defendant had exercised its discretion not to enforce the otherwise "binding and enforceable" Award. (*See* Answer ¶ 41.) Nowak cannot claim that this was all a mistake years later, and years into litigation, to avoid RICO liability.

Nowak next argues that Chase has failed to show an injury to its business. But Chase has attached documentation that Nowak has litigated the enforcement of the Award in federal court (*see* ECF Nos. 69-4 to 69-7), which at the very least indicates that Chase has had to spend money on legal representation to defend itself over the past several years. "As many courts have found, ['monetary losses in the form of legal fees' a party had to pay in response to 'fraudulent lawsuits'] may constitute injuries to business or property under § 1964(c) so long as they were 'proximately caused by a RICO violation.'" *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 153 (S.D.N.Y. 2014) (collecting cases).

Because Chase has met its burden of showing that there remain no genuine issues of material fact as to its RICO claims, and Nowak's counterarguments are unavailing, summary judgment is warranted.

### B. Nowak's Counterclaims

In order to close this case entirely, Chase moves to dismiss Nowak's counterclaims with prejudice. (*See* Chase Mem. at 23-30.) These counterclaims are: (1) subornation of perjury, (2) public disclosure of private facts/invasion of privacy, (3) trademark and copyright infringement, (4) counterfeiting and forgery, (5) unjust enrichment, and (6) recoupment. (Answer ¶¶ 194-258.)

Nowak's counterclaims for perjury, counterfeiting and forgery, unjust enrichment, and recoupment are all related to Chase's two state court actions for foreclosure on Nowak's CEMA and HELOC notes. The counterclaims related to Nowak's CEMA Note are barred by the doctrine of *res judicata*. "[R]*es judicata*, or claim preclusion, holds that a final judgment on the

merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. N.Y.C. Dep't. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quotation marks omitted).  A claim is precluded from subsequent litigation if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.* at 285.

Chase commenced a foreclosure action on Nowak's CEMA Note in February 2019 in Nassau County Supreme Court, which was adjudicated on the merits. (Chase SOF ¶¶ 6-8.)  The Supreme Court granted Chase summary judgment and judgment of foreclosure and sale, and the court rejected Nowak's counterclaims challenging the legitimacy of the note and the foreclosure process, as well as Nowak's arguments regarding statutorily mandated disclosures. (*See id.* ¶¶ 8-10; *see* ECF No. 64-10 at 8-11.)  Nowak thus had and took the opportunity to challenge the legitimacy and process of the CEMA Note foreclosure in state court, and he is precluded from relitigating those issues here.  Further, to the extent that any of Nowak's counterclaims regarding the legitimacy of the CEMA Note foreclosure were not directly litigated in the state court action, they could have been raised and are still barred by *res judicata* because they arose from the same transaction as the claims that were raised in the state foreclosure action.  *See O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981) ("[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.").[8]

---

[8] Further, to the extent that Nowak is asking the Court to overturn aspects of the state court's decision on his foreclosure, this Court lacks the subject matter jurisdiction to do so pursuant to the *Rooker-Feldman* doctrine, that is, "the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d. Cir. 2005).

Insofar as Nowak's counterclaims relate to the HELOC Note, they are barred by *Younger* abstention, or "the basic doctrine of equity jurisprudence that courts of equity should not act . . . to restrain a criminal prosecution [and certain civil actions], when the moving party has an adequate remedy at law and will not suffer irreparabl[e] injury if denied equitable relief." *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). Chase commenced a foreclosure action in state court for Nowak's HELOC Note in March 2023, and that action is still "pending before the Nassau County Supreme Court." (Chase SOF ¶ 11.) The *Younger* abstention doctrine has been extended to certain civil actions, including foreclosure actions, because they "concern the disposition of real property and hence implicate important state interests, and there is no reason to doubt that the state proceedings provide the plaintiff with an adequate forum to make the arguments he seeks to raise in this court." *See Manning v. City of New York*, No. 24-CV-4747, 2024 WL 3377997, at *3 (S.D.N.Y. July 11, 2024) (quotation marks omitted). This Court therefore declines to adjudicate challenges to the HELOC Note that are already pending before the state court.

Thus, the only counterclaims the Court may properly consider are Nowak's claims of public disclosure of private fact and trademark and copyright infringement.[9] Nowak first argues that because Chase initially filed unsealed documents on this case's docket that contained his social security number, they have caused his private information to be accessible in the public

---

[9] Nowak also alleges that Chase violated the Graham Leach Bliley Act ("GLBA"), 15 U.S.C. §§ 6801-02, and the First Amendment to the U.S. Constitution when Chase inadvertently published his social security number on the public docket. (Answer ¶ 207.) However, Chase is correct that the GLBA does not contain a private right of action for individuals like Nowak to sue the regulated financial institutions. *See* 15 U.S.C. §§ 6801-02; *see also Rezende v. Citigroup Glob. Markets, Inc.*, No. 09-CV-9392, 2010 WL 4739952, at *5 (S.D.N.Y. Nov. 18, 2010) ("As courts in this district and elsewhere have recognized, the GLBA does not provide for a private right of action."). And the facts Nowak alleges do not plausibly raise a First Amendment claim.

domain and made him "susceptible to identity theft," though he does not identify any instance of theft or harm that he experienced as a result of Chase's actions. (Answer ¶¶ 208-09.) Chase admitted its mistake, albeit months later, and asked the Court to seal the documents that contained Nowak's social security number. (*See* ECF No. 53.)

Nowak's public disclosure of private fact claim necessarily fails because New York common law does not recognize privacy torts such as public disclosure of private fact. *Howell v. New York Post Co.*, 81 N.Y.2d 115, 124 (1993) ("While the courts of other jurisdictions have adopted some or all of these [privacy] torts, in this State . . . we have no common law of privacy."); *Porco v. Lifetime Ent. Servs., LLC*, 150 N.Y.S.3d 380, 386 (4th Dep't 2021) (same). And even affording Nowak the special solicitude of a *pro se* party and reading his counterclaims broadly to raise claims under the state's statutory privacy protections or general negligence, those claims would still be legally insufficient. New York's statutory privacy protections apply only to infringement on one's privacy "for advertising, or for the purposes of trade." N.Y. Civ. Rights Law §§ 50-51; *see also Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436, 441 (2000) ("First, recognizing the Legislature's pointed objective in enacting sections 50 and 51, we have underscored that the statute is to be narrowly construed and strictly limited to nonconsensual commercial appropriations of the name, portrait or picture of a living person." (quotation marks omitted)).

Nowak cannot succeed on a claim of general negligence either, because he has identified no adverse consequences that have ever arisen from the inadvertent publication of his social security number or other private information on the public docket. (*See* Answer ¶ 209 (describing the harm to Nowak as rendering him "susceptible to identity theft").) Thus, he has failed to allege a concrete injury and could not provide ascertainable damages for this

hypothetical harm. *See Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981) ("[A] court always is required to undertake an initial evaluation of the evidence to determine whether the plaintiff has established the elements necessary to a cause of action in negligence, to wit: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof."). Indeed, lower state courts have rejected attempts by litigants to circumvent the New York legislature's limitation on privacy torts by back-dooring publication of private fact into a negligence claim. *See Valeriano v. Rome Sentinel Co.*, 842 N.Y.S.2d 805, 806 (4th Dep't 2007) ("Indeed, the failure to dismiss plaintiff's negligence cause of action would result in the 'circumvention of established privacy law.'" (quoting *Madden v. Creative Servs., Inc.*, 84 N.Y.2d 738, 747 (1995))). Nowak could potentially bring an ordinary negligence claim in the future if he can show that (1) he experienced a concrete injury, and (2) there was causation between that injury and Chase's temporary disclosure of his social security number on the docket. However, because Nowak has yet to allege either of these necessary elements, his counterclaim sounding in negligence is dismissed as unripe.

Finally, Nowak alleges trademark and copyright infringement, seemingly because Chase used his name, "Martin Piotr Nowak®™ or MARTIN PIOTR NOWAK®™," which he claims are trademarked and copyrighted, in its briefings in this case. (*See* Answer ¶¶ 217-18.) Even assuming Nowak has a valid and protectable trademark and registered copyright on his name, suing a person or entity and thus using that name in a court filing does not give rise to liability for copyright or trademark infringement.

Nowak's counterclaims that are not barred by *res judicata*, the *Rooker-Feldman* doctrine, or *Younger* abstention, then, fail to state a claim and are thus dismissed.

15

### C. Remedies

Chase seeks (1) a declaratory judgment from the Court that the Award is unenforceable, (2) a permanent injunction to prohibit Nowak from future fraudulent mailing and from filing suit in federal court to enforce the Award, and (3) an award of attorney's fees and costs. (Chase Mem. at 19-23.) The Second Circuit has recently confirmed that equitable remedies are available to private litigants bringing a RICO claim pursuant to Section 1964(a), so a permanent injunction is a proper remedy. *See State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 94 (2d Cir. 2024). And a declaratory judgment is obtainable pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201; *see also Powell v. McCormack*, 395 U.S. 486, 499, 517-18 (1969).

#### 1. Declaratory Judgment

First, a declaratory judgment is appropriate here because the "substantial controversy" over Nowak's fraudulent mailings is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). While Nowak has recently admitted that the enforcement of the Award was a "mistake" (Nowak Mem. ¶ 31), his pattern of behavior over nearly a decade suggests that such mailings may well begin again as soon as this case concludes. The Court thus grants Chase a declaratory judgment that the Award is unenforceable, null and void, and that Defendants have no entitlement to recovery under it.

#### 2. Permanent Injunction

A permanent injunction is also warranted. "[A] plaintiff seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity

16

is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010) (quotation marks omitted).

Chase has satisfied these four factors. The fraudulent mailings and Nowak's attempt to enforce them in federal court have caused the company to spend money and time disputing the Award and defending itself. However, money damages could not fully compensate Chase for the risk of harm to their reputation, as Nowak's public filings accuse Chase of significant wrongdoing against a client. (*See, e.g.*, ECF No. 64-2 at 4 (accusing Chase of "trespass," "default" and "breach of [contract]" against Nowak); ECF No. 64-5 at 14-17 (accusing Chase of committing fraud in judicial proceedings and of engaging in a RICO conspiracy).)

Finally, the balance of the hardships and considerations of public interest would heavily weigh in favor of preventing further mail fraud and fanciful litigation to enforce made-up billion-dollar awards. The Court thus converts the preliminary injunction issued on September 15, 2023 into a permanent one, insofar as it enjoins Nowak and the Trust Defendant (1) from mailing Chase further fraudulent correspondences and (2) from any further attempts to recover the Award, including by filing lawsuits in federal court against Chase for legal enforcement of the Award.[10] (*See* ECF No. 31.)

### 3. Monetary Relief

The civil RICO statute provides that a successful plaintiff may recover "threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Although Chase does not seek an award of damages, it does request an award of its fees and costs in connection with this litigation. Chase has not yet documented its reasonable

---

[10] This injunction does not extend to mailings by Nowak about the impending foreclosure and sale of his home, or lawsuits related to those actions.

fees and costs, but it may do so in a post-judgment motion for fees and costs (although it may choose not to seek fees and costs in light of Nowak's bankruptcy filings as well his *pro se* status, his eventual admission that his claims concerning the Award were mistaken, and the fact that the unlawful mailings have stopped). If Chase chooses to further pursue its claim for attorney's fees and costs, it shall file a motion for fees and costs with supporting documentation within three weeks of the publication of this Opinion and Order. In the event that Chase does file such a motion, Nowak shall file any response within three weeks of the filing of Chase's motion.[11]

### IV.     Leave to Amend

The Second Circuit has made clear that "[d]istrict courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summary order) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). However, a Court need not grant leave to amend when amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011). Because Nowak's motion for leave to amend merely relitigates the foreclosure actions in state court and would therefore be barred by *res judicata*, the *Rooker-Feldman* doctrine, or *Younger* abstention, *see supra* Section III.B., the Court declines to grant him leave to amend his complaint.

### V.     Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED and Defendant's motion for leave to file amended counterclaims is DENIED.

---

[11] In light of the availability of fees and costs under the RICO statute, the Court declines Chase's request, in the alternative, to sanction Nowak pursuant to Rule 11(b). Any request for fees and costs should be limited to fees and costs incurred in Chase's pursuit of its RICO claims and not in responding to Nowak's proposed counterclaims.

18

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate the motions at Docket Numbers 68 and 81, to enter judgment in favor of Plaintiff, and to close this case.

The Clerk of Court is further directed to mail a copy of this Opinion and Order to Defendant Nowak.

SO ORDERED.

Dated: July 15, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge